In the Matter of the Estate of E. BRUCE JOHNSON, Deceased. ELEANOR MUELBERGER, Appellant; GENEVIEVE JOHNSON, Respondent.

Argued January 11, 1950; decided April 13, 1950.

**14**

*Saul Hammer* and *Le Roy G. Edwards* for appellant. I. The Florida decree of divorce is invalid for lack of jurisdiction. (*Curley* v. *Curley,* 198 So. 584 [Fla.]; *Chisholm* v. *Chisholm,* 125 So. 694 [Fla.]; *Phillips* v. *Phillips,* 1 So. 2d 186 [Fla.]; *Wade* v. *Wade,* 113 So. 374 [Fla.].) II. The requirements of full faith and credit of the United States Constitution did not preclude appellant's attack upon the Florida decree. (*Williams* v. *North Carolina,* 325 U. S. 226; *Matter of Lindgren,* 293 N. Y. 18; *Urquhart* v. *Urquhart,* 272 App. Div. 60, 297 N. Y. 689; *Senor* v. *Senor,* 272 App. Div. 306, 297 N. Y. 800.) III. The decree of divorce against decedent was invalid in Florida and subject to attack there by appellant. (*Wade* v. *Wade,* 113 So. 374 [Fla.]; *Phillips* v. *Phillips,* 1 So. 2d 186 [Fla.]; *Chisholm* v. *Chisholm,* 125 So. 694 [Fla.]; *State ex rel. Willys* v. *Chillingworth,* 168 So. 249 [Fla.].)

*John H. Munley* and *George J. Meade* for respondent.
I. Decedent, having personally appeared as defendant in the
Florida divorce action, would be prevented from attacking the
decree. (*Miller* v. *Miller,* 271 App. Div. 974; *Shea* v. *Shea,*
270 App. Div. 527; *Vernon* v. *Vernon,* 288 N. Y. 503; *Schacht*
v. *Schacht,* 295 N. Y. 439; *Hoyt* v. *Hoyt,* 265 App. Div. 223;
*Tiedemann* v. *Tiedemann,* 225 N. Y. 709; *Glaser* v. *Glaser,* 276
N. Y. 296; *Hess* v. *Hess,* 276 N. Y. 486; *Guggenheim* v. *Wahl,*
203 N. Y. 390.) II. Conceding that decedent defendant would
be estopped from contesting the divorce decree, petitioner is
likewise estopped from collaterally attacking the Florida divorce
decree, and the State of New York is compelled to accord full
faith and credit to the Florida decree, based as it was upon
the appearance of both parties with full opportunity to litigate
the matter of domicile. (*Hynes* v. *Title Guar. & Trust Co.,* 273
N. Y. 612; *Matter of Blum,* 185 Misc. 43; *Sherrer* v. *Sherrer,*
334 U. S. 343; *Coe* v. *Coe,* 334 U. S. 378; *Stoll* v. *Gottlieb,* 305
U. S. 165; *Davis* v. *Davis,* 305 U. S. 32; *Kinnier* v. *Kinnier,*
45 N. Y. 535; *Ruger* v. *Heckel,* 85 N. Y. 483; *Frost* v. *Frost,*
260 App. Div. 694.)

LEWIS, J. This appeal, taken by petitioner as of right on con-
stitutional grounds (N. Y. Const., art VI, § 7, subd. [1]; Civ.
Prac. Act, § 588, subd. 1, cl. [a]), presents for review an order of
the Appellate Division unanimously affirming a Surrogate's
decree adjudging to be valid and effective under section 18 of the
Decedent Estate Law an election by the respondent, Genevieve
T. Johnson, as surviving spouse of E. Bruce Johnson, deceased,
to take as in intestacy a share of the decedent's estate.

The petitioner-appellant is the daughter of the decedent and
sole legatee under his will. Following probate proceedings the
respondent, claiming to be the testator's widow, served and filed
a notice, pursuant to section 18 of the Decedent Estate Law,
declaring her election to take against decedent's will her intes-
tate share of his estate. Thereupon the petitioner instituted
this proceeding under section 145-a of the Surrogate's Court
Act to obtain a determination of the validity of such election.

The petitioner is the child of the decedent's first marriage.
After the death of his first wife the decedent in 1939 married
Madoline Ham, from whom he was divorced in 1942 by a Florida

decree the validity of which is a decisive factor in this proceeding. In 1944 the decedent and the respondent entered into the marriage — now challenged by the petitioner as void — which is the basis for the respondent's present claim of widowhood and for her statutory election to take an intestate share of the decedent's estate.

As an item in our consideration of this case we note judicially the fact that in 1942, a statute of Florida provided — " In order to obtain a divorce the complainant must have resided ninety days in the state of Florida before the filing of the bill of complaint." (Fla. Stat. Ann., § 65.02.)* In the light of that statutory requirement we have examined the record of hearings had before the Surrogate, at which evidence was received referable to the 1942 Florida divorce action instituted against the decedent by his second wife, Madoline Ham Johnson. We find no evidence, within the jurisdictional requirement of the Florida statute, quoted (*supra*), that the plaintiff " * * * resided ninety days in the state of Florida before the filing of the bill of complaint." Furthermore, there is evidence, which stands undisputed, that for a period of at least two years prior to the date in 1942 when the Florida divorce action was instituted by her, Madoline Ham Johnson resided in the State of New York, except for three months in the winter of 1941–1942 when she went to Florida for a brief period. During that brief sojourn she instituted a divorce action which was formally withdrawn by her on February 16, 1942, and within a week thereafter she returned " home " — to use her word — to the decedent, who then resided in the State of New York. Thereafter she remained in the State of New York until early in June, 1942, when she went to Florida where, on July 29, 1942, she filed a bill of complaint against the decedent in the action for divorce here in controversy. In that connection there is evidence, which is conceded by the petitioner, that in the 1942 Florida divorce action the decedent appeared by attorney and interposed an answer to his wife's complaint, which answer denied allegations of his misconduct but did not put at issue the plaintiff's allegation that she had resided in Florida continu-

---

* The time factor in the Florida statute has been interpreted by the courts of that State to mean ninety days *next* preceding the filing date. (*Curley* v. *Curley*, 144 Fla. 728, 731.)

ously for more than a period of two years immediately preceding the filing of her bill of complaint.

The petitioner in the present proceeding asserts that respondent's marriage to the decedent was void because the 1942 Florida divorce action was legally ineffective to dissolve decedent's second marriage, the alleged invalidating factor being the failure by the plaintiff in that action to comply with statutory requirements as to residence then effective in that State. Ruling that the decree of divorce granted by the Florida court in 1942 is entitled to full faith and credit in the State of New York, the Surrogate wrote:

" In the Florida court, the decedent appeared by attorney and interposed an answer denying the wrongful acts but not questioning the allegations as to residence in Florida. The record discloses that testimony was taken by the Florida court and the divorce granted Madoline Johnson. Both parties had full opportunity to contest the jurisdictional issues in that court and the decree is not subject to attack on the ground that petitioner was not domiciled in Florida.

" Since the decree is valid and final in the State of Florida, it is not subject to collateral attack in the courts of this state."

Mindful of the undisputed facts recited by the Surrogate as the basis for his decision — which decision has met with unanimous affirmance at the Appellate Division — and it appearing without dispute that the plaintiff is in law a stranger to the divorce action instituted in a Florida court in 1942, we are to determine whether the courts below rightly ruled against the petitioner's challenge, on jurisdictional grounds, to the Florida divorce decree and rightly accorded to that decree full faith and credit in the State of New York.

It cannot be denied that after the decedent had appeared in the 1942 Florida divorce action and filed an answer but had not availed himself of the opportunity afforded him to assert the plaintiff's failure to comply with statutory requirements then prevailing as to residence, neither he nor his second wife, Madoline Ham Johnson, as parties to that action, could thereafter challenge on jurisdictional grounds the validity of the divorce decree which followed. (*Davis* v. *Davis,* 305 U. S. 32, 40.)

The rule of the case last cited was defined in *Sherrer* v. *Sherrer* (334 U. S. 343, 351–352) as follows: "We believe that the decision of this Court in the *Davis* case [305 U. S. 32] and those in related situations are clearly indicative of the result to be reached here. Those cases stand for the proposition that the requirements of full faith and credit bar *a defendant* from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by *the defendant* in the divorce proceedings, where *the defendant* has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." (Emphasis supplied.) (And see *Coe* v. *Coe*, 334 U. S. 378, 384.) Indeed, the scope of the *Sherrer* case (*supra*) rule has a like limitation, as shown by the following excerpt from the opinion (p. 349): "The question with which we are confronted, therefore, is whether such a finding [of requisite jurisdictional facts] *made under the circumstances presented by this case* may, consistent with the requirements of full faith and credit, be subjected to collateral attack in the courts of a sister State in a suit brought *by the defendant in the original proceedings.*" (Emphasis supplied.)

In this jurisdiction we have repeatedly disallowed such a challenge by a party who has appeared in the action and filed an answer but has not availed himself of the opportunity afforded him to assert failure by the opposing party to present evidence which brings the case within the court's jurisdiction. (*Tiedemann* v. *Tiedemann*, 225 N. Y. 709; *Pearson* v. *Pearson*, 230 N. Y. 141, 148; *Borenstein* v. *Borenstein*, 272 N. Y. 407; *Glaser* v. *Glaser*, 276 N. Y. 296, 299; *Hess* v. *Hess*, 276 N. Y. 486; *Vernon* v. *Vernon*, 288 N. Y. 503.)

There are, however, pronouncements clearly indicating that where jurisdictional facts upon which rests a foreign divorce decree fall short of meeting statutory requirements then effective in the foreign State, a stranger to the divorce action — as is the present petitioner — is not deprived of the right by collateral attack to challenge the validity of the decree. Thus in *Williams* v. *North Carolina* (325 U. S. 226) the view of a majority of the court on this subject was expressed at page 230: "It is one thing to reopen an issue that has been settled after appropriate

opportunity to present their contentions has been afforded to all who had an interest in its adjudication. *This applies also to jurisdictional questions.* After a contest these cannot be relitigated *as between the parties.* [Citing cases.] *But those not parties to a litigation ought not to be foreclosed by the interested actions of others; * * *."* (Emphasis supplied.)

This court has recently had occasion to apply that rule which allows third parties to attack a foreign divorce judgment on jurisdictional grounds. (See *Matter of Lindgren,* 293 N. Y. 18, 23; *Urquhart* v. *Urquhart,* 272 App. Div. 60, affd. 297 N. Y. 689; *Senor* v. *Senor,* 272 App. Div. 306, 312, affd. 297 N. Y. 800.) In connection with the application of that principle it should be said that the argument that a decree of divorce operates in rem and therefore must be wholly good or wholly bad, is met by a statement in *Williams* v. *North Carolina* (325 U. S. 226, *supra,* at p. 232) : " Although it is now settled that a suit for divorce is not an ordinary adversary proceeding, it does not promote analysis, as was recently pointed out, to label divorce proceedings as actions *in rem. Williams* v. *North Carolina, supra,* at 297. [317 U. S. 287.] But insofar as a divorce decree partakes of some of the characteristics of a decree *in rem,* it is misleading to say that all the world is party to a proceeding *in rem.* See *Brigham* v. *Fayerweather,* 140 Mass. 411, 413, 5 N. E. 265, quoted in *Tilt* v. *Kelsey, supra,* at 52. [207 U. S. 43.] All the world is not party to a divorce proceeding. What is true is that all the world need not be present before a court granting the decree and yet it must be respected by the other forty-seven States provided — and it is a big proviso — the conditions for the exercise of power by the divorce-decreeing court are validly established whenever that judgment is elsewhere called into question. In short, the decree of divorce is a conclusive adjudication of everything except the jurisdictional facts upon which it is founded, and domicil is a jurisdictional fact. To permit the necessary finding of domicil by one State to foreclose all States in the protection of their social institutions would be intolerable."

Under the authority conferred by section 1 of article IV of the Federal Constitution, Congress has enacted that judgments " shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken."

(1 U. S. Stat. 122, now U. S. Code, tit. 28, § 1738.) That provision has been interpreted by the Supreme Court of the United States to mean — " * * * that which has been adjudicated in one state " shall be " *res judicata to the same extent* in every other." (Emphasis supplied.) (*Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 438.) Thus appears in statutory form a doctrine announced by Chief Justice MARSHALL in *Hampton* v. *M'Connel* (3 Wheat. [U. S.] 234, at p. 235), that " * * * the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced, and that whatever pleas would be good to a suit thereon in such state, and none others, could be pleaded in any other court in the United States." That view survives today substantially intact. (*Fauntleroy* v. *Lum,* 210 U. S. 230, 236–237; *Williams* v. *North Carolina,* 317 U. S. 287, 293–294.)

Under the Florida divorce statute (Fla. Stat. Ann., § 65.02, quoted *supra*) and the decisions of the courts of that State thereunder, the statutory requirement of ninety days' residence next preceding the filing of a divorce bill goes to the jurisdiction of the court assuming to grant the divorce decree. (*Phillips* v. *Phillips,* 146 Fla. 311, 320.) Compliance with that requirement cannot be proved or obviated by admission of the parties. " Such residence being jurisdictional, an admission thereof by the parties in their pleadings is ineffectual as a substitute for proof. The requisite residence must be alleged in the bill and established by proof. This is not an instance in which facts going to the jurisdiction may be effectually admitted by the parties." (*Wade* v. *Wade,* 93 Fla. 1004, 1006–1007; and see *Taylor* v. *Taylor,* 132 Fla. 690, 696.)

It follows in this proceeding that the petitioner, a stranger to the Florida divorce action and decree, could successfully challenge the validity of that decree in collateral proceedings in the courts of Florida by producing proof of fraudulent circumstances under which it was obtained. (See *State ex rel. Willys* v. *Chillingworth,* 124 Fla. 274, 278–279.) To hold that she could not do likewise in this State would be to give to the Florida decree a more conclusive effect here than it would have in Florida.

The conclusion we have reached is further reinforced by the following excerpt from the opinion in *Williams* v. *North Carolina* (325 U. S. 226, 229, *supra*) — " But the [Full Faith and Credit] Clause does not make a sister-State judgment a judgment in another State. The proposal to do so was rejected by the Philadelphia Convention. 2 Farrand, The Records of the Federal Convention of 1787, 447–48. ' To give it the force of a judgment in another state, it must be made a judgment there.' *M'Elmoyle* v. *Cohen,* 13 Pet. 312, 325. It can be made a judgment there only if the court purporting to render the original judgment had power to render such a judgment. A judgment in one State is conclusive upon the merits in every other State, but only if the court of the first State had power to pass on the merits — had jurisdiction, that is, to render the judgment.

" ' It is too late now to deny the right collaterally to impeach a decree of divorce made in another State, by proof that the court had no jurisdiction, even when the record purports to show jurisdiction *  *  *.' It was ' too late ' more than forty years ago. *German Savings Society* v. *Dormitzer,* 192 U. S. 125, 128."

The order of the Appellate Division should be reversed and the proceeding remitted to the Surrogate's Court of Nassau County for further proceedings not inconsistent with this opinion, with costs in this court and in the Appellate Division to abide the event. The motion herein by respondent to dismiss the appeal taken by the petitioner on constitutional grounds should be denied.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Ordered accordingly.